UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------

JAMES H. HOFFMAN,

                  Plaintiff,

     vs                                        6:04-CV-1317

CIBA VISION CORPORATION,

                  Defendant.

----------------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| BERGER, DuCHARME & HARP, LLP<br>Attorneys for Plaintiff<br>10 Maxwell Drive - Suite 205<br>Clifton Park, New York 12065 | JOSEPH C. BERGER, ESQ. |
| KELLEY, DRYE & WARREN LLP<br>Attorneys for Defendant<br>101 Park Avenue<br>New York, New York 10178 | BARBARA E. HOEY, ESQ.<br>JOEL A. HANKIN, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       This action involves allegations of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 296. Plaintiff James H. Hoffman ("plaintiff" or "Hoffman") brings claims against his employer, the defendant CIBA Vision Corporation ("CIBA"), for conduct related to the termination of his employment. Plaintiff also brings a state law claim for breach of contract. The defendant moves for summary judgment on all claims pursuant to Fed. R. Civ. P. 56. Oral argument was heard via video conference

between the Utica, New York and Albany, New York federal courthouses on February 3, 2006. Decision was reserved.

## II. **FACTS**

CIBA manufactures and distributes contact lens and lens care products to doctors and retailers throughout the United States. Hoffman worked for CIBA as a territory manager in northern New York from 1989 until January 8, 2004. During this time period he received three Distinguished Performer Awards. Plaintiff admits, however, that as far back as 1994 he was regularly informed by his employer that he was not adequately performing all of the requirements of his position, specifically his administrative duties.

As Senior Territory Manager plaintiff was required to meet sales objectives set by CIBA as well as a number of other administrative duties: (1) planning and executing between five and seven pre-booked customer appointments each day, (2) developing and executing marketing activities and product promotions, (3) recording and describing his sales calls and entering other data into CIBA's computer system, (4) timely responding and following up on customer calls, and (5) maintaining regular and timely correspondence with his manager via email and voicemail.

In his 1999 Annual Performance Review, Hoffman received a job rating of "D/E" which meant that he was only partially meeting expectations. He failed to meet his sales targets for several products and it was noted that he was often behind on administrative reports. Plaintiff's Annual Performance Review for the year 2000 revealed lingering deficiencies. He admits to having fallen below expectation in recording his sales calls and experienced negative growth in respect to lens care products. Nonetheless he was rated favorably overall as having an excellent year and expended great effort.

Mr. Lawrence MacGirr held a number of positions at CIBA over the years and was Vice- President of sales in 2000. He testified that, following some corporate changes made in an effort to address changes in the marketplace, there was a company-wide initiative to address employee performance. (Docket No. 23 Ex. D, MacGirr Dep. 18 -21.) Indeed, plaintiff claims that by January 2002 "[he] felt like [he] was being reprimanded for things that were never discussed prior . . . Sales achievement or lack thereof in specific categories, administrative work." (Docket No. 17, Hoffman Dep. 110.)

The effect of the changes on staffing was reportedly the topic of conversation at company sales meetings. In the fall of 2003 plaintiff and another man from his office, Mr. Jake Skaggs, attended a sales meeting of CIBA's Eastern Area employees in Atlanta, Georgia. Mr. Patrick Marsalek, a regional Sales Director for the Great Lakes area, stated to a number of sales representatives and managers that, considering the long hours and pressure at CIBA, "What CIBA's really looking for, you guys, is people that are not yet married, got no kids, willing to work twenty-four hours a day, basically slaves." Id. at 207-208.

Mr. James Fitzgerald, a sales representative with CIBA from 1989 through 2004 attended a sales meeting in New Orleans, in June of 2004. He heard Mr. Ben Nobles, the Area Director for CIBA'S Southern Region and former Vice President of Human Resources, comment to a regional manager that "we may want to accelerate the turnover rate." (Docket No. 17, Ex. 24.) Mr. Skaggs and Mr. Fitzgerald also reported that there seemed to be some discomfort among a few of the older workers about changes in the company and the increasing difficulty of doing a good job.

Hoffman observed a shift from older to younger employees at the company. Mr. Griff Hastings ("Hastings"), a CIBA market manager, was promoted to Regional Sales Director in December of 2000. Plaintiff points out that four out of the seven sales representatives who reported to Hastings when he was promoted were over age forty. However, by October 2004, the four were no longer with the company: one resigned, one relocated, one took another job, and the plaintiff was fired.

Hasting's promotion made him Hoffman's direct supervisor and responsible for preparing plaintiff's performance evaluations. After spending some time with plaintiff traveling on sales calls in May and August of 2001, Hastings admonished him for failing to make changes in the way he worked, which meant late reports, paperwork, and correspondence. Plaintiff was reminded that as senior territory manager he must set an example for the other managers. These deficiencies remained uncorrected and were noted in plaintiff's 2001 Annual Performance Review. Plaintiff received a rating of "E" - the lowest possible score. CIBA asserts, albeit without documentation, that plaintiff ranked lower than other employees in reporting calls and in timeliness of paperwork, but higher than others in customer complaints about not getting back to them. Defendant also claims that plaintiff's sales were below the regional average. Accordingly, Hastings warned plaintiff to improve his reporting and administrative skills. Plaintiff responded, "I must improve my administrative performance and I will." (Docket No. 17, Ex. 2, 2001 Annual Performance Review, CV 00030.)

Hoffman's 2002 Annual Performance Review rating showed some improvement, but he remained below expectations and he received a rating of "D". While described as an asset in training and making sales, plaintiff's reports were still late, which affected Hastings'

ability to generate timely reports. He also failed to meet sales targets for colored contact lens. Plaintiff acknowledged these shortcomings but maintained that he had a good year:

> I am a bottom line person. My sales growth in 2002 has been very strong. My territory is very chain dominated and [CIBA] from time to time has been less than superb in growing the chain business (i.e. Empire Vision). However, I have been able to exceed the companies growth % again this year.

(Docket No. 17, Ex. 3, 2002 Annual Performance Review, CV 00017.) In fact, in the past, productivity in sales was sufficient to overcome administrative deficiencies and plaintiff had regularly been awarded raises.

Also in 2002, plaintiff participated in the North American Optics 2002 Incentive Plan promulgated by CIBA. Under this plan, if an employee increased his sales by 14% and sold 1840 incremental units of lens care, he would be entitled to certain benefits including $10,000 cash and a vehicle upgrade. Plaintiff believes he met the plan requirements and is entitled to the benefits, but the defendant disagrees.

Hoffman's poor performance continued to be a problem into 2003. After attending sales calls with the plaintiff in January of 2003, Hastings acknowledged plaintiff's sales skills but noted deficiencies in paperwork and cosmetic sales. In March of 2003, plaintiff was reminded again to keep current with his email. Plaintiff admits that he was selective about which messages he read and when he read them.

By letter dated August 15, 2003, Hoffman was placed on probation for failure to improve, and thus adequately perform, his administrative duties. Moreover, he failed to achieve his sales objectives. He was informed that he would be disciplined further, up to termination of his employment, if he failed to meet specified expectations: (1) achieving sales growth of 12%, (2) pre-booking and properly reporting at least four sales calls per day, and

(3) attending all regional conference calls.  Plaintiff responded in writing that he could and would meet those expectations.  Hoffman asserts that "[y]ounger sales representatives with poor sales growth in 2002 were not placed on probation.  An example was Jim Sylvester, age 30."  (Docket No. 20, Hoffman Aff. ¶ 52.)

Plaintiff failed to submit timely sales reports in September and October 2003 and missed his sales targets for the fourth quarter.  However, he claims to have had a strong sales performance in the third quarter of 2003.  Whatever his administrative failures, plaintiff asserts that he outperformed the company and regional average in seven of eight quarters dating back to the fourth quarter of 2001 through the third quarter of 2003.

After approximately three months on probation, Hoffman sought clarification of his employment status in December of 2003.  Hastings informed plaintiff that he did not see the improvements he required and asked him to respond in writing on his own behalf.   Plaintiff failed to respond.  Also around that time Hastings received a customer complaint which indicated that plaintiff may have engaged in a dishonest arrangement to improve his sales record.

Hastings decided to terminate plaintiff's employment.  He asserts that the decision was made based on plaintiff's overall job performance, the customer complaint, and plaintiff's failure to improve during the probationary period.  Hoffman was forty-six years old when his employment with CIBA was terminated on January 8, 2004, by Hastings, age sixty.  Hoffman was replaced by Mr. Gary Sachs, age thirty-three.

Hoffman brings three claims in this action.  In the first two claims he alleges that the circumstances of his termination demonstrate age discrimination in violation of the ADEA and

NYSHRL. Second, he alleges that CIBA breached the North American Optics 2002 Incentive Plan in not awarding him benefits pursuant to the agreement.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Richardson v. New York State Dep't of Correctional Servs., 180 F.3d 426, 436 (2d Cir. 1999). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (1986).

Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co., 475 U.S. at 586; Richardson, 180 F.3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983). Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Co., 475 U.S. at 587. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Anderson, 477 U.S. at 248-49; Matsushita Elec. Indus. Co., 475 U.S. at 587.

### B. <u>ADEA and NYSHRL Discrimination Claims</u>[1]

The ADEA's purpose is "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). The prohibitions provided in the statute apply to protect individuals of at least forty years of age. <u>See</u> 29 U.S.C 631(a) (b). Under the ADEA it is unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Of course, it is not unlawful to discharge or discipline an employee for good cause. <u>See</u> 29 U.S.C. § 623(f).

"It is well-settled that ADEA claims are properly analyzed under the familiar burden-shifting standard applicable to Title VII employment discrimination claims first articulated by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973)." <u>Kearney v. County of Rockland,</u> 373 F. Supp. 2d 434, 442 (S.D.N.Y. 2005).

> Under the McDonnell Douglas burden shifting framework, a plaintiff must first establish a prima facie case of age discrimination. Once the plaintiff has made out a prima facie case, the employer is required to offer a legitimate, nondiscriminatory business rationale for its actions. If the employer articulates such a reason, the presumption of age discrimination dissolves, and the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason for the adverse employment action.

<u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456 (2d Cir. 2001).

---

[1] "Age claims brought pursuant to the [NYS]HRL are subject to the same analysis as claims under the ADEA . . . Accordingly, the ensuing discussion addresses plaintiff's ADEA and [NYS]HRL claims." <u>Morris v. Charter One Bank</u>, F.S.B., 275 F. Supp. 2d 249, 254 (N.D.N.Y. 2003) (citing <u>Abdu-Brisson v. Delta Air Lines, Inc</u>., 239 F.3d 456, 466 (2d Cir. 2001)).

"To establish a prima facie case of age discrimination, a plaintiff must show four things: (1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of age discrimination." Id. Plaintiff has met this de minimis burden: (1) he is over 40 years of age; (2) it is not disputed that he is qualified for the position he held for more than ten years; (3) plaintiff's employment was terminated; and (4) after his termination from employment he was replaced by a thirty-three year old. See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000) ("Generally, a plaintiff's replacement by a significantly younger person is evidence of age discrimination.").

Since the plaintiff has met his burden of stating a prima facie case the burden shifts to the defendant. In this case, plaintiff concedes that the defendant has met its burden of production in demonstrating legitimate and non-discriminatory reasons for plaintiff's dismissal by way of the submitted work evaluations. The issue is here is whether or not plaintiff has raised a question of fact as to whether those reasons are pretextual. Accordingly, "to defeat a [the] defendant's properly supported motion for summary judgment, . . . plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the employee's age was the real reason for the discharge." Woroski v. Nashua Corp., 31 F.3d 105, 108-109 (2d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 516 (1993)).

Plaintiff first attempts to demonstrate pretext by attacking the validity of the stated, non-discriminatory reasons for firing him. Thereafter, in an effort to demonstrate that age was the real reason for dismissal, he offers evidence of discriminatory intent: (1) two

comments made at CIBA sales meetings, which he asserts reflect company policy; (2) the fact that older employees who worked under Hastings, for one reason or another, no longer work for the company; and (3) a statement that younger sales representatives with poor sales growth in 2002 were not placed on probation. The arguments will be addressed in turn.

### 1. **Validity of Stated Reasons for Dismissal**

Hoffman contends that the reasons stated by CIBA for his dismissal are false and unworthy of belief. The defendant lists several reasons for terminating plaintiff - including poor sales performance, too few pre-booked calls, and a dishonest sales incident - but, plaintiff focuses on the defendant's complaints about his administrative deficiencies.

First, plaintiff argues that, according to his job description, his administrative duties constitute only 5% of his work and thus, deficiencies in that area could not justify his termination. Besides the fact that this is not the sole reason offered for plaintiff's dismissal, this argument is without merit. The relative percentages assigned to tasks do not equate to the value of the work performed -- especially where the percentages apparently refer to time allocations. This is especially true of administrative tasks. Indeed, one only has to consider how long it takes to print a payroll check in relation to the value of the task performed to the respective employees. Regardless, "[w]hether an employee's performance was satisfactory depends upon the employer's criteria." Ogiba v. Business Servs. Co., 20 F. Supp. 2d 379, 382 (N.D.N.Y. 1998) (citing Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 29 (2d Cir. 1997).

Next, plaintiff maintains that he was chronically deficient in completing his administrative duties, regularly admitted this shortcoming to his employer, and promised to

improve. Thus, he had always been deficient in this regard and therefore it cannot serve as a legitimate basis for his termination in 2003. He essentially argues that if the deficiency was an actual, legitimate concern of the defendant's he would have been terminated at an earlier date. He now relies on defendant's tolerance of his shortcoming to argue that those duties are not important enough in his overall performance to justify the termination of his employment. However, plaintiff's meeting of past performance standards, even by way of an employer's tolerance, does not demonstrate the meeting of current standards. See Schulz v. Varian Med. Sys., 315 F. Supp. 2d 923, 931 (D. Ill. 2004). Also, the record does not support the argument that the tasks were not a priority to the defendant all along; plaintiff's work evaluations clearly relate the importance of the administrative work to the defendant.

Furthermore, to the extent that there was a change in the emphasis placed on the administrative tasks, the defendant is entitled to adjust priorities and change performance measures in response to its business needs. Where business is tracked and managed through computer generated reports, and inter-office communication is accomplished through email, it is reasonable to place more emphasis on computer related tasks than may have been previously. Finally, plaintiff's conclusion that his overall sales performance should outweigh his administrative deficiencies does not make the defendant employer's opposite conclusion suspect. Even if plaintiff is correct, "the ADEA prohibits discrimination, not poor judgment." Bunk v. GSA, 408 F. Supp. 2d 153, 158 (W.D.N.Y. 2006) (citing Richane v. Fairport Central School Dist., 179 F.Supp.2d 81, 87 (W.D.N.Y. 2001)).

The fact that plaintiff was chronically deficient in completing administrative tasks which he viewed, and continues to view, as a small percentage of his overall position, does

- 11 -

support an inference that the defendant's ultimate response to the deficiencies was illegitimate or unworthy of belief.

## 2. Comments Indicating Age Discrimination

Hoffman asserts that CIBA management maintained a policy of preference for younger workers, which is demonstrated by two comments made at regional sales meetings. CIBA characterizes the comments as mere stray remarks in the workplace.

The first comment Hoffman points to was made by Mr. Patrick Marsalek, a regional Sales Director for the Great Lakes area: "What CIBA's really looking for, you guys, is people that are not yet married, got no kids, willing to work twenty-four hours a day, basically slaves." (Docket No. 17, Ex. 5 Hoffman Dep 207-208.) The second comment, made by Mr. Ben Nobles, the Area Director for CIBA'S Southern Region and former Vice President of Human Resources, and overheard by Mr. James Fitzgerald, concerned the company's possible interest in accelerating the turn over rate. (Docket No. 17, Ex. 24.) This second comment was made six months after plaintiff's termination. It is not disputed that neither Hastings, or any other manager that plaintiff reported to, ever said anything derogatory to the plaintiff about his age.

The two comments are not sufficient evidence to support an inference of age discrimination and withstand the defendant's motion for summary judgment. The Second Circuit has held that even more specific comments by the person who made the termination decision were insufficient to demonstrate age discrimination in light of a defendant's supported non-discriminatory reasons for the dismissal. In Woroski, the defendant employer's reasons for dismissal were different than CIBA's, the employer was downsizing and other employees were retained because they were more qualified. Woroski, 31 F.3d at

107. Like the defendant in that case, CIBA here has thoroughly demonstrated its legitimate reasons for the dismissal. Both the plaintiffs in <u>Woroski</u> and the instant case offer discriminatory comments made by defendant employees to demonstrate pretext.

In <u>Woroski</u>, however, unlike this case, the comment(s) were made by the manager who made the decision to fire the plaintiff. The manager made comments similar to the following comment on many occasions:

> [T]he "salary work force[] was older, had been around too long, made too much money and enjoyed too many benefits" and that "what this company needed was new younger people, perhaps people out of college . . . that were younger, more aggressive, hungrier, that would have come and not had six weeks vacation . . . and in fact could be hired for, you know, half or 70% of what these people . . . enjoy.'

<u>Id</u>. at 108. Even though this comment was repeated, less ambiguous and made by the decision maker, it was still insufficient to raise a question of fact as to age discrimination in light of the defendant's supported non-discriminatory reasons. <u>Id</u>.; <u>see also</u> <u>Molin v. Shapiro</u>, 73 Fed. Appx. 511, 512 (2d Cir. 2003) (comments by decision-maker related to age were insufficient to demonstrate discriminatory motive.) The two, unrelated and ambiguous comments made by non-decision makers offered here are simply insufficient to support an inference of age discrimination in light of the defendant's performance record.[2]

---

[2] The <u>Woroski</u> court did note that the statement also indicated the employer's concern for cost management, which is permissible, non-discriminatory factor and adds to the defendant's assertions that the reasons for the dismissal were not age related. <u>Woroski</u>, 31 F.3d at 110 n 2. The absence of this additional factor does not diminish the comparison of <u>Woroski</u> with the instant case. While that factor is lacking, in the instant case includes its own additional factor - the plaintiff has never disputed the substance of the poor work evaluations, which likewise adds support to the defendant's assertions that the reasons for the dismissal were not age related.

Plaintiff cites <u>Danzer v. Norden Sys.</u> for the proposition that the two comments are not mere stray remarks and are therefore sufficient to support an inference of discriminatory intent. 151 F.3d 50, 55 (2d Cir. 1998). <u>Danzer</u> is not persuasive here because the allegedly discriminatory remarks in that case were made by the plaintiff's supervisor who was directly involved the evaluation of plaintiff's job performance. <u>Id</u>. at 53. The remarks made in the instant case were by defendant employees who had no role in plaintiff's employment. This factual difference undermines any analogy made between the cases.

### 3. **Turnover under Hastings**

Four out of the seven sales representatives who reported to Hastings when he was promoted to Regional Sales Director in 2000 were over age forty. Hoffman points out that by October 2004 the four were no longer with the company: one resigned, one relocated, one took another job, and the plaintiff was fired. The allegation itself relates that the three other employees left of their own choice. Plaintiff does not allege, and the record does not reveal, that the other three employees were terminated or subjected to any particular defendant conduct due to age discrimination. The bare facts of a voluntary turnover of three employees, and one termination of person over forty, over a two-year period, especially considering the increased emphasis on performance measures during that time, is weak support, if any, for an inference of age discrimination.

### 4. **Discriminatory Probation**

Finally, plaintiff adds, "[y]ounger sales representatives with poor sales growth in 2002 were not placed on probation. An example was Jim Sylvester, age 30." (Hoffman Aff. ¶ 52.) Plaintiff's bare statement is simply too conclusory to be of any weight. If true, it does not necessarily mean the decision not to place Mr. Sylvester on probation was related to age. It

could have been due to any number of business related considerations and, by itself, the allegation proves nothing. "Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not, in and of itself, prove discrimination." Feldman v. Looms, No. 98-9680, 1999 U.S. App. LEXIS 25092, *6-7 (2d Cir. October 4, 1999) (citing Futrell v. J.I. Case, 38 F.3d 342, 348 (7th Cir. 1994)).

Thus, even taking the comments made at sales meetings, the turnover of employees under Hasting's supervision, and the bare allegation of favoring a younger worker together, plaintiff has created only a weak issue of fact. The totality of this evidence is insufficient to support an inference of discriminatory intent in light of the defendant's abundant evidence of plaintiff's chronically poor performance. See Cross v. N.Y. City Transit Auth., 417 F.3d 241, 249 (2d Cir. 2005) (discussing the parties' burdens). No reasonable factfinder would conclude that plaintiff's dismissal was due to age discrimination and defendant is entitled to summary judgment.

### C. Breach of Contract Claim

"Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where 'the district court has dismissed all claims over which it has original jurisdiction.'" Manhattan Telecomms. Corp. v. DialAmerica Mktg., 156 F. Supp. 2d 376, 384 (S.D.N.Y. 2001). Considering that the federal claims in this action are to be dismissed, supplemental jurisdiction of the remaining state law claim is declined, and that claim will be dismissed without prejudice. See Valencia v. Sung M. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. § 1367(c)); Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state law claims where no federal claims remained).

## IV. **CONCLUSION**

Plaintiff has failed to demonstrate that the defendant's legitimate and non-discriminatory reasons for his dismissal were pretextual in order to maintain his age discrimination claims. Supplemental jurisdiction over the state law breach of contract claim will be declined.

Accordingly, it is

ORDERED that

1. Defendant CIBA Vision Corporation's motion for summary judgment is GRANTED;

2. Plaintiff James Hoffman's breach of contract claim is DISMISSED without prejudice; and

3. The complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

Dated: June 7, 2006
       Utica, New York.

United States District Judge